ADAMS, Justice.
This appeal is from an order of the Montgomery County Circuit Court upholding on appeal an order issued by the Alabama Public Service Commission (APSC). The Circuit Court enjoined South Central Bell Telephone Company (Bell) from violating the APSC order, and specifically from “closing its Phenix City business office until it is authorized to do so by either the Commission or upon a final Court Order.” Bell appealed to this court pursuant to Code 1975, § 37-1-132.
The issues raised by Bell are as follows:
1. Did the Circuit Court err in issuing an injunction that enforces an invalid APSC order?
a. Was the APSC without statutory authority, and thereby without jurisdiction, to issue an order, in a rate case, prohibiting or suspending Bell’s consolidation of residence service center offices?
b. Was the APSC without statutory authority to enter an order prohibiting Bell from consolidating residence service center offices without notice or hearing, or when there was no evidence before the APSC that such consolidations would affect Bell’s service to the public?
2. Did the Circuit Court err in allowing on appeal, and over Bell’s objection, an affidavit and testimony not in the certified record of the proceedings before the APSC?
We answer these questions in the affirmative, and reverse.
*1095 The salient facts in this case are as follows:
In January, 1981, Bell announced to its employees its plan to close its business offices in Jasper and Phenix City, consolidating their services with business offices elsewhere. On February 2, 1981, Bell instituted a rate case by filing with the APSC a proposed schedule of new rates and charges. On February 5, the APSC, pursuant to Code 1975, § 37-l-81(b), suspended the effective date of the new rate schedule to September 5, 1981. On March 4, 1981, three Bell customers filed a complaint with the APSC, alleging that the closing of the Bell office in Phenix City would deprive them of adequate access to services presently provided and would be in violation of § 37-2-5 of the Code. On March 23, Bell filed an answer to the complaint, denying APSC’s jurisdiction to hear the customers’ complaints concerning the closing of the Phenix City office. The complaint proceeding was assigned an APSC docket number, but was not set for hearing. However, on May 27 the APSC issued an order in the Bell rate case then pending, stating that the matter of the closings of the two Bell business offices would be investigated in the rate proceeding, and that Bell should not close any offices prior to September 5, 1981. On May 29 Bell filed notice of appeal from that order to the Montgomery County Circuit Court. On June 1 Bell closed its Jasper business office.
The hearings on the Bell rate case began June 2, 1981. At that time Bell presented testimony and evidence regarding planned and past consolidations of business and residence service centers and their economic benefits. The Attorney General and APSC counsel cross-examined Bell’s witnesses, but no evidence was presented in opposition to the consolidation of business offices at that time. The three Bell customers who had filed the complaint did not appear.
In mid-July, 1981, Bell filed its complaint on appeal to the circuit court. With its answer the APSC filed a motion for a preliminary injunction enforcing its May 27 order prohibiting Bell from closing its Phe-nix City office or any other offices pending the APSC’s decision in the rate case, due September 5. The circuit court heard the motion the day it was filed and issued a TRO prohibiting Bell from closing the Phe-nix City office until further order. The trial court set a hearing for July 28 on the motion for a preliminary injunction. At the hearing, at which both the appeal and the motion were heard, the APSC presented a witness and an affidavit over Bell’s objection. The trial court ruled that the testimony would be considered in support of the injunction, but not with regard to Bell’s claim on appeal.
On July 30,1981, the trial court issued its order, in which it found that the subject matter of the May 27 order was within the jurisdiction and statutory authority of the APSC, and that the order was not, on its face, illegal and void. It thereupon enjoined Bell from violating the APSC order of May 27, 1981, and specifically enjoined Bell “from closing its Phenix City business office until it is authorized to do so by either the Commission or upon a final Court Order.”
It is clear that the legislature, by Chapters 1 and 2 of Title 37, has granted to the APSC broad powers of supervision and control over utilities. The general powers, jurisdiction and supervision of utilities are summarized in §§ 37-1-31 and 37-1-32:
§ 37-1-31.
The rights, powers, authority, jurisdiction and duties by this title conferred upon the commission shall be exclusive and, in respect of rates and service regulations and equipment, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility.
§ 37-1-32.
*1096 The public service commission shall have general supervision of all persons, firms and corporations operating utilities mentioned in this title, shall inquire into the management of the business and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine such utilities as often as may be necessary to keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property are owned, leased, controlled, managed, conducted and operated, not only with respect to adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this title, and any other law or laws, with the orders of the commission, and with the charter and franchise requirements. It shall assemble and keep on file, available for the use of the public, full statistics on the foregoing, as well as on all other matters or things connected with such utilities as is necessary to a full knowledge of their business and affairs.
More specifically, § 37-1-50 requires that a utility shall not “abandon all or any portion of its service to the public ... unless and until written application is first made to the commission for the issuance of a certificate that the present or future public convenience or necessity permits such abandonment and the issuance of such a certificate.” Section 37-2-5, a similar statute pertaining to transportation companies, which by Code definition includes telephone companies, states that such a company shall not abandon “all or any portion of its service to the public or the operation of any of its lines, properties or plant which would affect the service it is rendering the public,” without a permit from the APSC allowing such an abandonment. However: “A regulatory agency is not the owner of the utility and therefore is not its financial manager. A commission is not empowered to substitute its judgment for that of the owners, who are responsible for the rendition of service, unless the owners have abused their discretion.” Alabama Public Service Commission v. Southern Bell Telephone and Telegraph Co., 253 Ala. 1, 23, 42 So.2d 655, 674 (1949). A managerial decision involving action other than an abandonment of property is to be left to the utility unless there is some abuse of its discretion. The proposed closing of certain of Bell’s business offices, while continuing to provide services formerly provided, is not on its face an abandonment requiring an application for a certificate of abandonment under either § 37-1-50 or § 37-2-5.
On the other hand, § 37-1-83 states:
Upon a complaint in writing made against any utility by ... any affected person, that any rate, service regulation, classification, practice or service in effect or proposed to be made effective is in any respect unfair, unreasonable, unjust or inadequate, or unjustly discriminatory, or unduly preferential, or constitutes unfair competition, or that the service is inadequate or cannot be obtained, the commission shall proceed, . .. after notice as provided in this division, to make such investigation as it may deem necessary or appropriate; but no order affecting such rates, service regulation, classification, practice, or service complained of shall be entered by the commission without notice and a hearing.
This section clearly gives the APSC a mandatory duty, as well as the authority, to investigate the closing of Bell’s service centers once a written complaint is filed. The problem arises with the manner in which the APSC attempted to carry out its duty in this instance. The last clause of the quoted portion of § 37-1-83 specifically prohibits the APSC from issuing an order affecting the action complained of until after a hearing. The clause does not limit its application to a “final order,” nor does it allow for a temporary or interlocutory order. Section 37-1-96 likewise provides: “No order shall be made by the commission affecting any rate or service, except as otherwise specifically provided, unless or until a public hearing has been held in accordance with the *1097 provisions of this title.” Section 37-l-81(b) specifically provides that when a utility files with the APSC a new schedule of rates or service regulations, the commission may, for a period not exceeding six months, suspend the operation of the proposed schedule pending its investigation. This provision does not speak to a situation where a complaint has been filed against a utility, and we find no other provision which would remove the case before us from the mandates of § 37-1-83 and § 37-1-96. Thus, we conclude that any order affecting a proposed change of service based on a complaint filed under § 37-1-83 is, prior to a hearing, premature.
The APSC appears to have attempted to bring its order under § 37-1-81(b) by issuing it in the rate case instituted by Bell. This attempt fails, as there are clearly two different matters involved. Bell’s new schedule of rates had already been suspended by the APSC until September 5, 1981. Investigation of the financial impact of the office closings was appropriate in attempting to determine the reasonableness of the proposed schedule of rates. Bell’s customers were protected from that financial impact pending the investigation by the suspension of the effective date of the new rates. But the allegations of inadequacy of service contained in the complaint filed with the APSC called for an entirely different type of hearing. The record indicates that no evidence was presented before the APSC in the rate case, that any service owed by Bell to its customers would be detrimentally affected by the closing of the business offices. The complainants themselves did not testify. In other words, the rate case hearing involved rate issues only, and there never was a hearing on the complaint as contemplated in § 37-1-83, et seq. Because the jurisdiction of the APSC is statutory, compliance with the requirements of the statutes is necessary. “The valid orders of a public service commission will be enforced in the courts, and orders not authorized by law are unenforceable.” Alabama Public Service Commission v. Western Union Telegraph Co., 208 Ala. 243, 94 So. 472 (1922). The APSC has the right to issue orders affecting managerial decisions after a hearing showing that those decisions detrimentally affect a service which the utility has a duty to provide. But such a showing was not made in this case. For the above reasons, we hold that the order of the APSC was invalid and the trial court erred in issuing an injunction enforcing it.
As regards the second issue, whether the trial court should have denied the introduction of new evidence on appeal, § 37-1-124 states:
§ 37-1-124. Proceedings on appeal.
The commission’s order shall be taken as prima facie just and reasonable. No new or additional evidence may be introduced in the circuit court, except as to fraud or misconduct of some person engaged in the administration of this title and affecting the order, ruling or award appealed from, but the court shall otherwise hear the case upon the certified record ....
The trial court admitted new evidence introduced by the APSC in support of its request for an injunction. Inasmuch as the request for an injunction was in the nature of an enforcement of the APSC order pursuant to § 37-1-104, the trial court was limited to the evidence in the certified record “except as to fraud or misconduct....” See Alabama Gas Corporation v. Wallace, 293 Ala. 594, 308 So.2d 674 (1976). Therefore, there was error in the admission of the new evidence.
For all of the above reasons we reverse the trial court, and remand with instructions that the trial court return the matter to the APSC for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, AL-MON and EMBRY, JJ., concur.